# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1840 | **DATE** | 3/28/2002 |
| **CASE TITLE** | U.S.A. ex rel Clarence Thomas vs. William Boyd | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, we deny the section 2254 petition for a writ of habeas corpus [1-1] brought by Clarence Thomas. This is a final and appealable order. This case is terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | MAR 2 9 2002 |
| ✓ | Docketing to mail notices. | date docketed |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |

TSA

courtroom deputy's initials

U.S. DISTRICT COURT CLERK

02 MAR 25 PM 5:44

Date/time received in central Clerk's Office

date mailed notice

mailing deputy initials

Document Number

14

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

UNITED STATES OF AMERICA, ex rel.　)
CLARENCE THOMAS,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Petitioner,　　)
　　　　　　　　　　　　　　　　　)　　No. 00 C 1840
　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　Judge Wayne R. Andersen
WILLIAM BOYD,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Respondent.　 )

**DOCKETED**

MAR 2 9 2002

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the petition of Clarence Thomas for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, we deny the petition for habeas corpus.

## BACKGROUND

For purposes of federal habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e). Thomas does not challenge the statement of facts set forth in the order of the Illinois Appellate Court affirming his aggravated robbery and aggravated battery convictions. *People v. Thomas*, No. 1-96-3383 (Ill. App. Ct. March 13, 1998). Accordingly, we will adopt such facts as our own.

Thomas' conviction arose from the robbery and beating of Jeffrey Bullard near 4209 West Carroll Avenue in Chicago, Illinois on March 5, 1996 at approximately 12:30 a.m. At trial, Bullard testified that, on the night in question, he and Marianna Bullard arrived at a location near Carroll Avenue to purchase heroin. Bullard gave Marianna $30 to buy the drugs. She exited the car and walked toward a gangway. At the same time, another car drove up and parked in front of

Bullard's car. Thomas and Anthony DuBose exited the car and walked in the same direction as Marianna. Several seconds later, Bullard heard Marianna scream. Then he saw her walking back toward the car, screaming and swearing at Thomas and DuBose. Bullard exited his car, walked toward the group, and asked what was going on. DuBose pulled out a gun, backed Bullard up against his car, and stated "Give it up, give it up." After Bullard replied that he did not have any money, DuBose hit him on the head with the gun, cutting him over his left eye. Bullard fell to the ground and DuBose and Thomas proceeded to beat him and take his wallet. Then Thomas and DuBose got into their car and drove away. When the police arrived, Bullard told them what had happened and described the men and their car. The officers stopped the car two blocks away and arrested Thomas and DuBose, who were identified by Bullard and Marianna at the scene.

At Thomas' bench trial, Officer Rodrick Robinson testified that, while on patrol on the night in question, he saw Bullard and Marianna flagging down the car driving in front of him. Then he saw a dark blue station wagon speeding away and followed it. While following the station wagon, Robinson learned that it had been used in a robbery. Several seconds later, the station wagon crashed into a curb and Robinson stopped to question the occupants about the robbery. Robinson and his partner made the occupants, one woman and two men (later identified as Thomas and DuBose), get out of the car. Bullard and Mariana were brought to the scene where they identified Thomas and DuBose. Robinson searched Thomas and DuBose, finding Bullard's wallet on DuBose's person and $30 on Thomas' person. Robinson's partner searched the car and found a toy gun wrapped in black tape. Bullard identified the gun as the one DuBose used to hit him. Robinson gave Thomas and DuBose *Miranda* warnings and escorted them to the police station.

2

Officer Leslie Smulevitz testified that she interviewed both Thomas and DuBose on the night in question after they arrived at the police station. After giving DuBose *Miranda* warnings, Smulevitz testified that DuBose gave a statement in which he stated that earlier that evening, he, Thomas, and a woman had gone to get heroin at a "heroin spot." When they arrived at their destination, they saw Bullard and Marianna. Thomas announced that he was going to rob Marianna. When Thomas began walking toward her, Bullard got out of his car. DuBose pulled the toy gun from his pocket, confronted Bullard, knocked him down, and took his wallet. Then DuBose stated that he, Thomas, and the woman drove away and were later arrested. At trial, defense counsel, who represented both Thomas and DuBose, objected to the use of DuBose's statement against Thomas. The trial court sustained the objection and ruled that the statement was admissible only against DuBose.

At trial, Officer Smulevitz testified that she also interviewed Thomas at the police station on the night in question. According to her testimony, Thomas stated that it was DuBose who wanted to rob Bullard and Marianna. Thomas asked DuBose if he would need a weapon but DuBose replied "no" because he had the toy gun. DuBose exited the car and told Marianna to give him her money, which she did. When Bullard got out of his car, Thomas and DuBose confronted him and then fought with him. Thomas indicated that it was DuBose who had gone through Bullard's pockets. Thomas told DuBose to "leave it alone," but DuBose took Bullard's wallet. At trial, defense counsel objected to the use of Thomas' statement against DuBose. Again, the trial court sustained the objection and ruled that Thomas's statement was admissible only against Thomas.

At the conclusion of a bench trial, the trial court found Thomas guilty of one count of aggravated robbery and one count of aggravated battery. Thomas was sentenced to 15 years in

3

prison for the robbery and 5 years in prison for the battery, to be served concurrently.

## PROCEDURAL HISTORY

Thomas timely filed a direct appeal of his conviction to the Illinois Appellate Court and counsel was appointed to represent him. He raised one issue, alleging that he was denied effective assistance of counsel due to a conflict of interest resulting from the joint representation of him and his co-defendant. On March 13, 1998, the Appellate Court rejected Thomas' ineffective assistance claim, finding that he had demonstrated no actual conflict of interest, and affirmed his conviction.

Proceeding *pro se*, Thomas timely filed a petition for leave to appeal to the Illinois Supreme Court in which he again claimed that his trial counsel had rendered ineffective assistance for the following six reasons: (1) conflict of interest; (2) profit motivation; (3) hostility between co-defendants; (4) inadequate preparation of the defense; (5) lack of sound tactical reasons to support his acts or omissions; and (6) disloyalty. On October 28, 1998, the Illinois Supreme Court denied Thomas' petition.

On August 11, 1998, Thomas, proceeding *pro se*, filed a petition for post-conviction relief in the Circuit Court of Cook County pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.* In his petition, Thomas raised two claims, each of which contained several subclaims. First, Thomas argued that he was denied his right to effective assistance of trial counsel because his counsel: (a) failed to interview and call available defense witnesses; (b) advised Thomas to not testify at trial; (c) failed to secure a hearing on the admissibility of Thomas' confession; and (d) failed to object to the admission of Thomas' confession at trial.

Second, Thomas argued that he was denied his right to the effective assistance of appellate counsel because his counsel failed to: (a) raise the claim that Thomas was denied due

4

process when the state failed to prove his guilt beyond a reasonable doubt; and (b) raise the claim that Thomas was denied due process when the state failed to preserve potentially useful evidence including the toy gun, blood samples from the toy gun, and the wallet.

On September 11, 1998, the Circuit Court of Cook County dismissed Thomas' petition as being patently without merit and not of constitutional magnitude.

On February 11, 1999, the public defender who represented Thomas on direct appeal filed a motion to withdraw as counsel under *Pennsylvania v. Finley*, 481 U.S. 551 (1987). In his motion to the Illinois Appellate Court, the public defender claimed that Thomas' post-conviction petition failed to allege any facts giving rise to a constitutional claim and that there were no appealable issues in the case. In response, Thomas filed a Motion in Opposition to Appointed Counsel's *Pennsylvania v. Finley* Brief in which he raised six claims. First, Thomas argued that his trial counsel rendered ineffective assistance of counsel when he: (a) failed to conduct an adequate investigation; (b) failed to properly impeach the state's witnesses; and (c) failed to present an adequate defense. Thomas' second argument was that his appellate counsel rendered ineffective assistance of counsel when he: (a) failed to conduct an adequate investigation; and (b) failed to effectively present Thomas' appeal. Third, Thomas asserted that the trial court erred in failing to conduct an evidentiary hearing on the state's failure to disclose material evidence including the toy gun, blood samples from the toy gun, and the wallet and identification. Fourth, Thomas claimed that the trial court erred in failing to conduct an evidentiary hearing concerning the appropriate length of his sentence. Fifth, Thomas argued that the trial court erred in failing to conduct an evidentiary hearing concerning trial counsel's refusal to permit Thomas to testify at his trial or to explain to him that he had the right to testify at trial. Finally, Thomas asserted that his claims were not barred by *res judicata*. On June 18, 1999, the Illinois Appellate Court

5

granted the public defender's motion to withdraw as counsel and affirmed the dismissal of Thomas' post-conviction petition.

On July 15, 1999, proceeding *pro se*, Thomas sought leave to appeal the Illinois Appellate Court's judgment affirming the dismissal of his post-conviction petition to the Illinois Supreme Court, raising the same claims. On October 28, 1999, the Illinois Supreme Court denied Thomas' petition for leave to appeal.

On March 27, 2000, Thomas filed in this Court the instant petition for a writ of habeas corpus raising five grounds for relief. For purposes of analysis, we will address them in the following manner. First, Thomas claims that his trial counsel rendered ineffective assistance of counsel when he: (a) failed to conduct an adequate investigation by (i) failing to investigate and impeach Jeffrey Bullard as a witness and (ii) failing to interview and call defense witnesses; (b) failed to properly impeach witnesses; (c) failed to present evidence in support of a defense of guilt beyond a reasonable doubt; and (d) operated under a conflict of interest by representing two defendants who had antagonistic defenses. Second, Thomas claims that his appellate counsel rendered ineffective assistance of counsel when he: (a) failed to conduct an adequate investigation and (b) failed to effectively present the appeal. Third, Thomas claims he was denied due process when the state failed to present material impeachment evidence, including the toy gun, blood samples from the toy gun, and the wallet and identification. Fourth, Thomas argues that he was denied due process and subjected to cruel and unusual punishment when the trial court failed to comply with the sentencing statute. Finally, Thomas claims the trial court erred in failing to hold an evidentiary hearing on whether his right to testify had been violated.

# DISCUSSION

## I. Exhaustion and Procedural Default

### A. Standard of Review

Pursuant to § 2254 of the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a prisoner is entitled to a writ of habeas corpus if he is being held pursuant to a state court judgment obtained in violation of the Constitution. *See* 28 U.S.C. § 2245; *Williams v. Taylor*, 529 U.S. 362, 375, 120 S.Ct. 1495 (2000); *Lowery v. Anderson*, 225 F.3d 833, 838 (7th Cir. 2000). A federal court may grant habeas relief under Section 2254 if the state decision: (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 386; *Boss v. Pierce*, 263 F.3d 734, 738 (7th Cir. 2001). The court will not reach the merits of a habeas corpus petition, however, unless a petitioner can show that he has exhausted his state remedies and avoided procedural default. *See* 28 U.S.C. § 2254; *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728 (1999); *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."). State courts must have "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. "[O]ne complete round" is finished once the petitioner has presented his claims, whether on direct or collateral appeal, at each stage of the appellate process, up through and including the Illinois Supreme Court. *Id.* at 847-48. We understand this requirement to mean that, if a petitioner chooses to utilize the mechanism contained in the Illinois Post-Conviction Act, he must present each claim

(and all of its different subclaims) to the state trial court, the Illinois Appellate Court, and the Illinois Supreme Court.

**B. Analysis**

In this case, exhaustion is not at issue. Respondent concedes that Thomas has exhausted his state court remedies for purposes of federal habeas review because he has no further avenues in state court through which to challenge his conviction. (Respondent's Answer to Petition for Writ of Habeas Corpus, ¶ 11) (hereinafter "Answer to Petition"). We now turn to the issue of procedural default.

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994), *overruled on other grounds by Hogan v. McBride*, 74 F.3d 144, 147 (7th Cir.1996). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S.Ct. 2546 (1991), or when the petitioner fails to present a claim to the state courts at the time and in the way required by the state. *Hogan*, 74 F.3d at 146.

In this case, Thomas has procedurally defaulted claims (1)(a)(i), (1)(b), (2)(a), (2)(b), (3), and (4) because he failed to pursue each claim through a complete round of the appellate process. *See O'Sullivan*, 526 U.S. at 845. Thomas has properly preserved claims (1)(a)(ii), (1)(c), (1)(d), and (5) for habeas review. We will address the merit of these claims below.

In addressing Thomas' claim of ineffective assistance of counsel (claim (1)) and its subparts, respondent states that this Court may conduct a merits analysis of subclaim (d) – that Thomas' trial counsel operated under a conflict of interest – conceding that it is not procedurally defaulted. (Answer to Petition, at 9.) Respondent contends, however, that Thomas' remaining

subclaims are procedurally defaulted because he raises them for the first time in his habeas petition. (*See* Answer to Petition, at 8.) We disagree.

After careful consideration of the record, we find that Thomas has procedurally defaulted claim (1)(a)(i) (i.e., his trial counsel was ineffective for failing to conduct an adequate investigation by investigating and impeaching Jeffrey Bullard). Although Thomas raised this particular claim before the Illinois Appellate Court and the Illinois Supreme Court during his appeal of the trial court's dismissal of his post-conviction petition, he did not raise it initially in his post-conviction petition. The state trial court was never given the opportunity to rule on the constitutional issues presented in claims (1)(a)(i). Because Thomas failed to pursue claim (1)(a)(i) through a complete round of the appellate process, it is procedurally defaulted. *O'Sullivan*, 526 U.S. at 845.

Similarly, we find that Thomas has procedurally defaulted claim (1)(b) (i.e., Thomas' trial counsel was ineffective for failing to impeach witnesses). After carefully reading Thomas' briefs, it is apparent that claim (1)(b) refers specifically to his counsel's failure to impeach Jeffrey Bullard at trial. Again, although Thomas raised such a claim in his briefs before the Illinois Appellate Court and the Illinois Supreme Court appealing the trial court's dismissal of his post-conviction petition, he failed to actually present the issue to the trial court in his post-conviction petition. Accordingly, claim (1)(b) is procedurally defaulted. *Id.*

In its answer, respondent failed to address what we have designated as claims (2)(a) and (2)(b) (i.e., Thomas' appellate counsel was ineffective for both failing to conduct an adequate investigation and failing to effectively present his appeal). (*See* Answer to Petition.) Although Thomas did identify the claim that his appellate counsel rendered inadequate assistance in his post-conviction petition and in his briefs to the Illinois Appellate Court and the Illinois Supreme

9

Court following the dismissal of his post-conviction petition, he did not do so in a manner that adequately presented the issue to each state court. While Thomas used language in the initial headings of his briefs to the Illinois Appellate Court and the Illinois Supreme Court which perhaps signaled an attack on his appellate counsel, he failed to expound on the claim either by including specific examples of deficient appellate representation or relevant case law. On the other hand, Thomas did provide more specific allegations against his appellate counsel in his post-conviction brief, including the argument that he should have raised certain claims on appeal. However, because he did not pursue this claim before the appellate courts, it must fail. Thus, claim (2) is procedurally defaulted.

With respect to claim (3) (i.e., the state failed to disclose material impeachment evidence to the defense), respondent asserts that Thomas is barred from raising this issue on habeas review because he did not argue the claim as a *Brady* violation in his post-conviction petition as he has done in the instant habeas corpus petition. (*See* Answer to Petition, at 9-10.) In his post-conviction brief, Thomas argued that the state failed to preserve material evidence, implying that such evidence does not exist. In contrast, Thomas argued in his briefs to the Illinois Appellate Court and the Illinois Supreme Court appealing the dismissal of his post-conviction petition that the state failed to produce the evidence, implying that such evidence does indeed exist. Because these claims are distinct, claim (3) is procedurally defaulted.

Finally, respondent argues that claim (4) (i.e., his sentence violates his right to be free from cruel and unusual punishment) is not appropriate for federal habeas review because a sentence that falls within the limits set by state law does not violate the Eighth Amendment. (*See* Answer to Petition, at 11.) We decline to address respondent's substantive argument. Although Thomas presented claim (4) to both the Illinois Appellate Court and the Illinois

Supreme Court after the trial court dismissed his post-conviction petition, he failed to raise it in his post-conviction petition. Thus, claim (4) is procedurally defaulted.

A federal court may nevertheless address the merits of a claim that is procedurally defaulted if a petitioner can establish cause and prejudice that would excuse such default or, alternatively, can establish that it fits within the miscarriage of justice exception to the cause and prejudice rule. *Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 84-85, 97 S.Ct. 2497 (1977). Beginning with the cause and prejudice standard, the Supreme Court has interpreted "cause" to be something external to the petitioner which is both beyond his control and which cannot be fairly attributed to him. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639 (1986). In order to establish "prejudice," the petitioner "must show not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Thomas has failed to establish cause and prejudice sufficient to preserve his procedurally defaulted claims. In his Reply to Respondent's Answer to Petition for Habeas Corpus (hereinafter "Reply to Answer"), Thomas addressed respondent's attack on his ineffective assistance claims by asserting that, if nothing more, he "presented a mere variation" of the same claims in each of his briefs. (Reply to Answer, at 2.) We disagree. As explained above, although Thomas argued in his briefs to the Illinois Appellate Court and the Illinois Supreme Court that his trial counsel failed to investigate and impeach Jeffrey Bullard (claims (1)(a)(i) and (1)(b)), he did not raise the issue, nor a variation of the issue, in his post-conviction petition.

Next, Thomas contends that, although he may not have argued claim (3) in "explicit constitutional terms," he presented enough substance to apprise the state court of the potential

11

existence of an error of constitutional dimension. (*See* Reply to Answer, at 6 citing *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir. 1984)). Thomas misunderstands what he must show in order to demonstrate cause and prejudice. His claims regarding the state's treatment of material evidence are distinct. One claim contends that the state failed to *preserve* evidence, while the other claim argues that the state failed to *produce* evidence. The fact that he does not raise each distinct claim consistently before the state courts is not the result of an external force, but rather his own failure to do so. Therefore, he has not established cause and prejudice sufficient to preserve claim (3).

Finally, Thomas has made no effort to explain why he raised claims (2)(a) and (2)(b) (i.e., his appellate counsel rendered ineffective assistance) or claim (5) (i.e., his sentence violated his right to be free from cruel and unusual punishment) in his post-conviction petition but failed to raise them in his subsequent appeals. Clearly, cause and prejudice have not been shown with respect to these claims.

Although Thomas has failed to establish cause and prejudice to excuse his procedural default, he can still overcome this forfeiture by showing that such default fits within the "miscarriage of justice" exception. The exception is limited to those extraordinary cases in which the petitioner is actually innocent of the crime for which he is imprisoned. *Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001). Therefore, it requires a colorable claim of actual innocence, as opposed to legal innocence, coupled with an allegation of a constitutional claim. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40, 112 S.Ct. 2514 (1992). The miscarriage of justice exception applies only if the petitioner can demonstrate that it is more likely than not that no reasonable jury would have convicted him in the absence of the alleged defect in the state court proceedings. *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851 (1995).

In this case, Thomas asserts that, if the state had disclosed the material evidence he alleges it had in its possession or if his trial attorney had impeached the state's witnesses, such material and testimonial evidence could have proven his innocence. (*See* Petition, at 6-7, 17-20.) Thomas' arguments, however, are supported by nothing more than speculation. He has not established that, if such evidence had been presented at trial, it would have been more likely than not that a jury would have declined to convict him. Thus, we find no miscarriage of justice.

Accordingly, Claims (1)(a)(i), (1)(b), (2)(a), (2)(b), (3), and (5) are barred from federal habeas review.

## II.     Merits of the Claims Properly Presented

Based on the discussion above, Thomas has properly preserved claims (1)(a)(ii), (1)(c), (1)(d), and (5) raised in his habeas petition. Thomas raised claim (1)(d) on direct appeal to the Illinois Appellate Court and again in a petition for leave to appeal to the Illinois Supreme Court. Thomas raised claims (1)(a)(ii), (1)(c), and (5) first in his post-conviction petition, then in his motion to the Illinois Appellate Court opposing his appellate counsel's withdrawal under *Pennsylvania v. Finley*, and finally in a petition for leave to appeal to the Illinois Supreme Court. We will examine the merits of each claim in turn.

### A. Standard of Review

Section 2254(d) of AEDPA governs the consideration of any claim adjudicated by a state court on its merits. Pursuant to AEDPA, we may grant habeas relief only if the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Alternatively, habeas review is appropriate if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the

13

evidence presented." 28 U.S.C. § 2254(d)(2).

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000), the Supreme Court attempted to clarify the applicable standard of review within the meaning of section 2254. The Court noted that AEDPA does not explicitly prescribe a recognizable standard of review for applying either of the statutory clauses. *Id.* at 385. Recognizing the need for further clarification and direction to lower courts, the Supreme Court concluded that the "[act] plainly sought to ensure a level of 'deference to the determinations of state courts,' as long as those decisions do not conflict with federal law or apply federal law in an unreasonable way." *Id.* at 376. Additionally, the Court determined that, in passing the statute, "Congress wished to curb delays, to prevent 'retrials' on federal habeas petitions and to give effect to state convictions to the extent possible under the law. When federal courts are able to fulfill these goals within the bounds of the law, [the statute] instructs them to do so." *Id.* Therefore, we are directed to apply a deferential review of the state court decision unless it is determined that the state court violated federal law.

**B. Analysis**

*(1) Ineffective Assistance of Trial Counsel*

Examining claims (1)(a)(ii), (1)(c), (1)(d), and (5) of Thomas' petition in the context of the standard set forth above, we must deny them. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), the Supreme Court set forth the standard for reviewing claims of ineffective assistance of counsel. *Strickland* sets forth a two-prong analysis for determining ineffectiveness of counsel: (1) a showing that counsel's performance was deficient; and (2) a showing that the deficient performance prejudiced the defendant. *Id.* at 678. In order to prevail on his claim of ineffectiveness under the first prong of the *Strickland* test, Thomas must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* In

reviewing the challenged conduct, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To satisfy the prejudice prong of the *Strickland* test, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* This Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* Rather, "[i]f it is easier to dispose of an ineffective assistance of counsel claim based on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." *Id.* We will discuss each of Thomas' properly preserved ineffective assistance claims in light of the Supreme Court's dictates in *Strickland.*

(a) Claim (1)(a)(ii)

In claim (1)(a)(ii), Thomas argues that trial counsel rendered ineffective assistance of counsel by failing to conduct an adequate investigation. Specifically, he charges that his trial counsel failed to interview and call defense witnesses. (*See* Petition, at 4.) Thomas concludes that because evidence in his case was "closely balanced" and the state's case was heavily dependent on Bullard's testimony, his counsel's failure to investigate possible defense witnesses fell below an objective standard of reasonableness and, thus, his counsel's deficiencies prejudiced his case. (*See* Petition, at 7.)

A claim that trial counsel failed to investigate and call a witness must be supported by an affidavit from the proposed witness. *See* 725 ILCS 5/122-2 (requiring petitioner to support his allegations of constitutional violations by "affidavits, records, or other evidence"); *People v. Johnson*, 154 Ill.2d 227, 239-40, 609 N.E.2d 304 (1993) (ruling that evidence supporting defendant's post-conviction allegations must be accompanied by an affidavit which identifies

with reasonable certainty the source, character, and availability of alleged evidence). In his petition, Thomas states that he provided his trial lawyer with the affidavits of two people whom he claims would have testified, in effect, that Jeffrey Bullard instigated the events at issue. (*See* Petition, at 5.) Although Thomas referenced these affidavits in his briefs, they were never introduced as a part of the record, either at trial or as exhibits to the instant petition. In the absence of such affidavits, we cannot determine whether the proposed witnesses would have provided testimony favorable to Thomas.

Furthermore, Thomas offers no evidence demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Decisions concerning whether to call certain witnesses on a defendant's behalf are matters of trial strategy, reserved to the discretion of the trial counsel. *United States v. Kozinski*, 16 F.3d 795, 813 (7th Cir. 1994) (ruling that the decision whether to call a defense witness is a strategic decision). Courts afford such decisions "enormous deference." *United States v. Hirschberg*, 988 F.2d 1509, 1513 (7th Cir. 1993).

In light of the strong presumption that the conduct of Thomas' trial counsel fell within the wide range of reasonable professional assistance and the fact that there were no affidavits provided in the record, claim (1)(a)(ii) must fail.

### (b) Claim (1)(c)

In a heading introducing claim (1)(c), Thomas argues that his trial counsel rendered constitutionally deficient representation because he failed to present all evidence of Thomas' defense of guilt beyond a reasonable doubt. After a careful reading of Thomas' brief, however, it is clear he believes that he was denied due process because the state failed to prove him guilty of aggravated battery beyond a reasonable doubt. (*See* Petition, at 11.) Accordingly, we will

address claim (1)(c) as a due process claim.

Thomas alleges that the state failed to prove that he "inflicted great bodily harm when he beat the victim, Jeffrey Bullard" and that "great bodily harm is an essential element of aggravated assault." (*See* Petition, at 11.) Thomas concedes that, although Bullard suffered bodily harm, his injuries did not rise to the level of great bodily harm. (*See* Petition, at 12.) Further, he argues that to sustain a charge of aggravated battery, the state is required to prove that "the perpetrator used a deadly weapon other than the discharge of a firearm." (*See* Petition, at 12) (citing 720 ILCS 5/12-4(b)(1)). Thomas argues that because the police discovered a toy gun, and not a deadly weapon, Bullard only suffered a battery. (*See* Petition, at 12.)

As explained above, we must examine whether the trial court's decision to convict Thomas of aggravated battery was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court's standard for judging the sufficiency of the evidence. *See* 28 U.S.C. § 2254(d)(1). Alternatively, Thomas' conviction of aggravated battery must have constituted a decision based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 § U.S.C. § 2254(d)(2).

"A federal court engaged in collateral review of a state court conviction must determine 'whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Milone v. Camp*, 22 F.3d 693, 703 (7th Cir.1994) (quoting *Jackson v. Commonwealth of Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979)). In this case, the trial court considered evidence including testimony that Thomas and DuBose beat Bullard by kicking him in the ribs, head, legs, and back, and by hitting him in the head with a gun. Giving proper deference to the trial court, we feel that it was reasonable for it to have concluded that Thomas was guilty of

aggravated battery beyond a reasonable doubt. We find that the trial court's decision that Thomas and DuBose committed aggravated battery was not contrary to or an unreasonable application of relevant law. In Illinois, what constitutes great bodily harm to support an aggravated battery charge is a question of fact to be determined by the trier of fact – in this case, the trial judge of the Circuit Court of Cook County. *People v. Hadley*, 20 Ill. App. 3d 1072, 314 N.E.2d 3, 7 (Ill. App. Ct. 1974). The trial court's decision in the present case is clearly not against the manifest weight of the evidence.

### (c) Claim (1)(d)

In claim (1)(d), Thomas argues that, because his attorney operated under a conflict of interest by representing two defendants with antagonistic defenses, his representation was constitutionally deficient. The Illinois Appellate Court's decision regarding this matter reflects ample consideration and appropriate application of the *Strickland* standard. In response to Thomas' charge that he could have testified consistently with his statement to the police that he did not play an active role in the crime if he had received his own trial or had been permitted to present an individual defense, the Appellate Court noted that "any such testimony would have been called into question by his post-arrest statement, in which he admitted asking DuBose whether he needed a gun." (Order of Illinois Appellate Court, at 5.) Furthermore, the Appellate Court noted that, when confronted with the potential conflicts of interest arising from the use of one defendant's statement against the other at trial, defense counsel objected to such use and the trial court sustained the objections. (*See* Order of Illinois Appellate Court, at 5.) Accordingly, we concur with the Illinois Appellate Court that Thomas has not met his burden to demonstrate that he was denied effective assistance of counsel regarding his trial lawyer's joint representation of the co-defendants.

*(2) Trial Court Erred in Failing to Hold an Evidentiary Hearing on Whether his Right to Testify Had Been Violated*

In claim (5), Thomas argues that his trial counsel was constitutionally deficient because he advised Thomas that his testimony would "hurt the chances of appeal." (*See* Petition, at 22.) Thomas states that such advice illustrates his attorney's assumption that "the trial was lost before it began." (*See* Petition, at 23.)

In *Brooks v. Tennessee*, 406 U.S. 605, 612, 92 S.Ct. 1891 (1972), the Supreme Court stated that "whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right." Despite the foregoing, however, we believe that Thomas' contention in the instant case should be rejected. The record does not support either his contention that he was prevented from testifying or that an evidentiary hearing on this question was required. Counsel is free to urge his professional opinion on his client, *see People v. Brown*, 54 Ill.2d 21, 24, 294 N.E.2d 285 (1973), and, if his client acquiesces in his counsel's conduct in this regard, he should be bound by such action. *See Milone*, 22 F.3d at 705; *People v. Novotny*, 41 Ill.2d 401, 410, 244 N.E.2d 182 (1968). Like any other right, the right to testify may be waived. The right to testify is "subject to the limitation that the defendant make his objection known at trial, not as an afterthought." *People v. Knox*, 58 Ill. App. 3d 761, 767, 374 N.E.2d 957 (Ill. App. Ct. 1978); *see also United States v. Thompson*, 944 F.2d 1331, 1345 (7th Cir. 1991) (courts have no affirmative duty to determine whether a defendant's silence is the result of a knowing and voluntary decision not to testify).

Although Thomas argues his trial counsel's advice to him was evidence of constitutionally deficient assistance, there is no evidence in the record that he made an objection to the tactic during trial or made a request of the judge that he testify. *See Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991) (stating that a barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify

19

in his own defense was denied). Moreover, although Thomas asserts that he could have testified that he did not play an active role in Bullard's robbery or assault, the Illinois Appellate Court noted in its order affirming the trial court's ruling that such testimony would have been called into question by his post-arrest statement in which he admitted asking his co-defendant whether he needed a gun. *See* Order of Illinois Appellate Court, at 5; *see also Underwood*, 939 F.2d at 475 (stating that any testimony defendant might have given would have been discredited on cross-examination). Accordingly, claim (5) must fail.

## CONCLUSION

For the foregoing reasons, we deny the § 2254 petition for a writ of habeas corpus brought by Clarence Thomas. This is a final and appealable order. This case is terminated.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: March 28, 2002